ALEX A. JORGE ET AL., demandantes y recurridos, *v.* UNIVERSIDAD INTERAMERICANA ET AL., demandados y peticionarios.

*Número:* O-77-294     *Resuelto:* 25 de marzo de 1980

*William Estrella* e *Igor Domínguez,* abogados de los peticionarios; *A. J. Amadeo Murga,* abogado de los recurridos.

### SENTENCIA

Los aquí recurridos instaron demanda ante el Tribunal Superior, Sala de San Juan, contra los aquí peticionarios, en que alegaron, *inter alia:*

"1. Los demandantes son todos estudiantes de Pedagogía en el nivel de estudios post graduados que comenzaron a cursar y cursaron durante los años 1972 a 1973 y 1973 a 1974, estudios post graduados conducentes al grado de Doctor en Pedagogía en la Universidad Interamericana, Recinto de San Juan.

2. La Universidad Interamericana, Recinto de San Juan, inauguró allá para el 1972, en coordinación con la Universidad de Lehigh, Estado de Pennsylvania, un Programa Doctoral en Educación y representó al público en general y a los demandantes en particular que ofrecería un programa de cursos conducentes a la obtención del grado de Doctor en Educación.

3. Dicha Universidad Interamericana aceptó los demandantes como estudiantes en el referido programa a partir del año escolar de 1972, cobrándole a cada uno para su ingreso en el referido programa los derechos de matrícula establecidos por dicha Universidad para el programa conducentes al grado doctoral en educación y los derechos de admisión a estudios post graduados.

4. Se alega por los demandantes que inducidos por la Universidad Interamericana y descansando en las representa-

ciones de ésta, hechas pública y privadamente, oral y por escrito, de que había inaugurado el referido programa, se matricularon en dicho programa, incurrieron en gastos y obligaciones y asistieron a éste durante los años escolares 1972–73 y 1973–74.

5. Allá para mediados de 1974, la Universidad Interamericana dio por terminado unilateralmente, sin consultar a los demandantes, el programa de cursos hacia el grado doctoral que ofrecía, dejándolo inconcluso por razones que los demandantes desconocen.

6. La actuación de la Interamericana fue contraria al contrato entre la Interamericana y los demandantes y consistió en una violación de las obligaciones contractuales asumidas por ésta y a las representaciones que indujeron a los demandantes a matricularse en el referido curso.

7. Se alega que la terminación del programa doctoral de educación fue hecha unilateralmente por la Universidad Interamericana como consecuencia de actuaciones arbitrarias e ilegales del Presidente de la Universidad Interamericana, Sol Luis Descartes, y de su Vice Presidente y Decana Ejecutiva, Lavinia H. Crescioni, quienes negligentemente y culposamente dieron por terminado el referido programa doctoral."

Alegaron, además, los recurridos que la actuación imputada a los demandados les causó determinados daños económicos y morales y solicitaron indemnización por ello.

Los demandados contestaron la demanda oportunamente. Admitieron la existencia del mencionado programa de estudios, que cursaban los demandantes, y la descontinuación del mismo. La controversia quedó centrada en el aspecto de responsabilidad de los demandados. Éstos alegaron específicamente que "los demandantes tenían conocimiento de que dicho programa se estaba poniendo en efecto en coordinación con la Universidad de Lehigh y que dependía de la cooperación y aportación de esta Universidad para que dicho programa pudiese continuarse". Alegaron, además, que "el curso en cuestión fue terminado en el ejercicio de la discreción académica y administrativa de la Universidad Interamericana". Solicitaron sentencia sumaria en que se desestimara la demanda, a lo cual se negó

el tribunal de instancia. Ello motivó el presente recurso de *certiorari.*

La resolución recurrida está recogida en la minuta del tribunal de instancia, de 25 de enero de 1977, presidido por la Hon. Carmen C. Cerezo, Juez. Dice así:

"MINUTA

"El Tribunal estuvo reunido en cámara desde las 9:30 a.m. hasta las 11:30 a.m. con los Lcdos. A. J. Amadeo Murga, abogado de los demandantes, y William Estrella, representando a los demandados, discutiendo la Moción de Sentencia Sumaria radicada en 20 de diciembre de 1976 y 17 de enero de 1977, así como la oposición de los demandados de la cual se suplió copia al Tribunal puesto que no apareció radicado en Secretaría el original. Se instruyó al Lcdo. Amadeo Murga que de no aparecer radicada la oposición, proceda inmediatamente a presentarla en Secretaría.

Considerados los argumentos de ambas partes y los documentos presentados en apoyo de la solicitud y la oposición, se resuelve que existe una controversia sustancial sobre el hecho referente a la causa que motivó la eliminación del programa de estudios, específicamente si la razón fundamental para la terminación del Programa Doctoral se debió a la ausencia de cooperación de la Universidad de Lehigh ocasionando que la Universidad Interamericana no estuviese capacitada para llevar a cabo dicho programa con la excelencia académica necesaria, o, si por el contrario, la terminación se debió a actuaciones irrazonables y arbitrarias de la parte demandada que culminaron con la terminación del programa. Se declaró sin lugar la Moción de Sentencia Sumaria, en cuanto a este planteamiento, que constituye el enfoque principal de la antes mencionada moción. Sin embargo, en el párrafo tercero de la solicitud radicada en 20 de diciembre de 1976 por la parte demandada se expone 'que en virtud de unas becas y ayuda económica que se le está brindando por la Universidad Interamericana a los estudiantes que solicitan o cualifican para continuar Doctorado en Educación, dichos estudiantes resultan económicamente beneficiados al presente comparado con la situación de no haberse descontinuado el curso y brindado esta ayuda económica en vista de los gastos y costos que sus estudios normalmente hubiesen conllevado. . . .'

En las aseveraciones cuarta y séptima de la Declaración Jurada suscrita el 17 de diciembre de 1976 por la demandada Lavinia H. Crescioni en apoyo a la sentencia sumaria, expone que los estudiantes estaban cursando estudios conducentes al grado de Doctor en Educación para la obtención del cual se requería su aprobación ulterior para tomar cursos avanzados y/o [sic] requisitos posteriores que ninguno de los demandantes había sido específicamente admitidos como candidatos al grado de Doctor en Educación ni por la Universidad Interamericana ni por la Universidad de Lehigh al momento de concluirse el programa de la Universidad Interamericana en 1974 y que esta universidad ha ofrecido cooperar y ha cooperado con todos los estudiantes que han solicitado el continuar sus estudios de Doctorado en Educación con la suma de $175.00 para gastos de viaje y una ayuda económica adicional de $2,000.00 una vez sean admitidos por la Universidad de Lehigh como candidatos al grado de Doctorado en Educación. En cuanto a este planteamiento es necesario que la parte promovente presente al Tribunal evidencia relativa a cada uno de los demandantes acreditando su posición frente a cada demandante individual. A ese fin se concede a la demandada término final de cuarenta (40) días a partir de hoy 25 de enero de 1977 para que presente la prueba necesaria sobre su condición verbal formulada durante la argumentación de que los demandantes ya se encontraban en la etapa de tener que trasladarse a proseguir estudios fuera de Puerto Rico y que necesariamente tenían que pasar por el escrutinio y cedazo de la Universidad de Lehigh para su admisión. Se presentará, además, prueba acreditando la aseveración contenida en el párrafo séptimo del Affidavit 305 suscrito en 17 de diciembre de 1976 por Doña Lavinia H. Crescioni, entendiéndose igualmente que la prueba sobre ayuda económica deberá dirigirse a cada uno de los demandantes individualmente.

De no cumplirse con la presentación de esta prueba dentro del término de cuarenta (40) días concedidos, se entenderá denegado el planteamiento que queda por adjudicar en la Moción de Sentencia Sumaria. La parte demandante promovida presentará dentro del término de cuarenta (40) días a partir de la notificación por los demandados de la prueba requerida, su oposición debidamente fundamentada.

De resultar necesaria la vista en su fondo, queda fijado el señalamiento del caso en sus méritos para los días 4 y 5 de octubre de 1977 a las 9:00 a.m., apercibiéndose a las partes que

este caso ha sido señalado como único caso en el calendario de esos días y que no habrá suspensiones a no ser que se justifique claramente al Tribunal que el motivo se debe a una circunstancia extraordinaria."

Alegan ante nos los peticionarios que incidió la Sala recurrida al determinar que existe controversia sobre los motivos que tuvo la Universidad Interamericana para eliminar el programa de doctorado en educación toda vez que, según alegan, no se controvirtieron las declaraciones juradas sometidas en apoyo de la solicitud de sentencia sumaria, indicativas de que el programa se descontinuó debido a "la falta de cooperación de Lehigh" y en el descargo por la Universidad Interamericana de su responsabilidad académica. Señalan que los demandantes-recurridos no ofrecieron declaraciones juradas ni prueba que establezca arbitrariedad de parte de la Universidad al descontinuar el programa.

Los demandantes, por su parte, descansan en que al oponerse a la solicitud de sentencia sumaria acompañaron una deposición tomada al Presidente de la Universidad demandada y correspondencia cursada entre ambas universidades, particularmente una carta del Decano John A. Stoops, de la Universidad de Lehigh, demostrativas de que existe controversia de hechos que derrota la solicitud de sentencia sumaria. La carta del Decano Stoops a la Dra. Crescioni, que es de 29 de abril de 1974, ciertamente pone en controversia la cuestión esencial de este caso, es decir, si la descontinuación del programa se debió a falta de cooperación de Lehigh o si fue irrazonable la actuación de la Interamericana. Por su importancia, la transcribimos íntegramente. Dice:

"Lehigh University
Bethlehem, Pennsylvania 18015

School of Education
Office of the Dean

April 29, 1974

Dr. Lavinia Crescioni
Vice President and Executive Dean
Inter American University
P.O. Box 1293
Hato Rey, Puerto Rico 00919

Dear Lavinia:

I appreciated your phone call of April 26. After we talked I had a much clearer understanding of our problems.

I'm keenly aware of I.A.U.'s need to justify the doctorate. Most everyone (even a Middle States observer) agreed that the reasons for the doctorate I put forward in the report recommending the founding of your School of Education are compelling. Since that report was written Nova University has attempted to establish an 'external' doctorate in Puerto Rico. If Nova succeeds, and I.A.U. fails, then I fear that a residency-research Ed. D. program may never develop in the Caribbean. In the face of the continuing malaise at U.P.R., I.A.U. is the only hope for a research doctorate in Puerto Rico. Under these circumstances I think any reasonable observer will agree that I.A.U., despite all its problems, is moving very responsibly in its effort to fill an unhealthy vacuum.

I'm also keenly aware of the limitations of your faculty, and up to about a year ago I was working on the matter. Among other things I was attempting to establish a tradition of publications. Two appeared and more were in prospect. It was rough doing; but, as you know, we had some disappointments.

Unfortunately, communications between I.A.U. and Lehigh ceased the day Julia Guzmán took charge of your School of Education. Warren Davis, the liaison person, has not even been involved in the program and gets information about it only

secondhandedly. She has told us nothing about her faculty appointments, nothing about the committee or course work that is going on, and none of her proposed visits to Lehigh ever materialized. She never even told us she was admitting more students and has yet to tell us who they are and for example, when I was there in February she asked me to get Gus Mellander for a summer course. I did that and wrote telling her so. She has never contacted him. Consequently, at the present time I'm completely uninformed about the faculty, the students, and the problems in general, and I'm more than a little embarrassed by the whole thing.

Frankly, I don't understand this. My personal relations with Julia have been and continue to be good. I can't think that she is so insensitive to my concerns and commitments that she would ignore me completely. But that is what has happened.

So I have been led to infer that I.A.U. has changed its mind about the doctoral program or perhaps changed its mind about working with Lehigh. This inference has been reenforced by your letter to me stating that we should tell students that it may not be possible for them to earn an I.A.U. degree. This is why I took the position I did in my letter to you of April 25. On one hand we are not informed of anything that is happening in your School to Education, and on the other hand we are informed that the entire burden of the program may shift to Lehigh. (While at the same time Dean Guzmán is admitting students without consulting or informing Lehigh.)

Lehigh wants to go on with the project, and the I.A.U. doctorate *must* be a *quality* doctorate or there is no point doing it. We are only your advisors. As such, we have no wish to intrude or to rush you into things. We *can* be of help in assembling a faculty with a research capability, but all we have had to work with in the past ten months is silence.

I like your idea of having the proposal examinations here on Lehigh standards with a stipulation that the students can graduate from I.A.U. if things work out well. If they wish, I.A.U. faculty can come here to help with the examination. According to our protocols those who pass these exams will become candidates. *I suggest we limit the number of such candidates to two or at the most three* and that we make certain that these are *very distinguished people.*

Finally, I will say we are ready to undertake another review. I am not interested in fault-finding, but the point of the review should

be the reestablishment of communications. Without this, any further steps we take will be futile.

> Sincerely,
>
> [Fdo.] John
>
> John A. Stoops
> Dean

JAS/hg
cc:  Dr. Bobonis
     Dr. Descartes." (Énfasis en el original.)

Es de suponer que el Decano Stoops, como testigo de los demandantes-recurridos, expondría y ampliaría sobre lo contenido en esta carta. Ello es suficiente para convencernos de que existe una genuina controversia de hechos sobre el aspecto crucial de por qué se descontinuó el programa, base de la reclamación de los demandantes recurridos. Es doctrina firmemente establecida que toda inferencia que se haga a base de los hechos y documentos obrantes en los autos debe tomarse desde el punto de vista más favorable a la parte que se opone a la solicitud de sentencia sumaria, y que toda duda en cuanto a si hay hechos relevantes en controversia debe resolverse contra la parte que solicita la sentencia sumaria. Véanse *Valcourt Questell* v. *Tribunal Superior*, 89 D.P.R. 827, 832 (1964); *Roth* v. *Lugo*, 87 D.P.R. 386, 396 (1963) y *Giordano* v. *Lee*, 434 F.2d 1227, 1230 (1970).

Por otro lado, la amplia discreción que pueda tener una institución universitaria en asuntos académicos y administrativos no impide que en el ámbito judicial se investigue si hubo un uso razonable de esa discreción o si se cometió una arbitrariedad y con ello se causaron daños que deban ser reparados. Es persuasivo el razonamiento de *Galton* v. *The College of Pharmaceutical Sciences, Columbia University*, 332 N.Y. Supp.2d 902 (1972), donde se dijo:

"Defendants argue that plaintiffs have no standing to sue and that the Court is powerless to act because only the Board of Regents has power to alter, suspend or revoke the charter of the College and

to dissolve it (Educational Law Page 219). There is no merit to the contention that the students have no standing. Students presently attending the College should not be peremptorily cast out of the College, and their education interrupted for an indefinite time, perhaps forever, if such action is arbitrary. Students are entitled to consideration from educational institutions who invite them to pursue their education in the halls of learning institutions. *Upon admission of a student to a college there is some obligation upon the part of the college to permit the student to continue his studies to graduation if willing and eligible to continue (Carr* v. *St. John's University, supra; Ryan* v. *Hofstra University, supra).* Of course, if circumstances beyond the control of the College, such as lack of finances, prevent the College from continuing, the issue is concluded. But there must be an opportunity to inquire into the basis of the determination. The Court must provide it. This does not appear to be the function of the Board of Regents." (Educational Law, Sec. 219.)

Anteriormente dictamos sentencia en este caso en que determinamos que procedía la sentencia sumaria. Atendidas la solicitud de reconsideración de los recurridos y demás escritos presentados por las partes, y por los fundamentos aquí consignados, reconsideramos y dejamos sin efecto la referida sentencia, se anula el auto expedido y se confirma la resolución recurrida.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario. El Juez Asociado Señor Díaz Cruz disintió con opinión a la que se une el Juez Asociado Señor Rigau. El Juez Asociado Señor Martín no intervino.

(Fdo.) Ernesto L. Chiesa
*Secretario*

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz al que se une el Juez Asociado Señor Rigau.

San Juan, Puerto Rico, a 25 de marzo de 1980

Atendemos a moción de reconsideración de sentencia dictada por este Tribunal el 19 de octubre de 1977.

Los demandantes aceptaron la oferta en el catálogo de la Universidad Interamericana de un curso de doctorado en educación, programa a desarrollarse en cooperación con la Universidad de Lehigh toda vez que la primera carecía del personal diestro para encauzar los estudios. La disponibilidad de Lehigh era elemento esencial en la realización del programa. Se trataba de una iniciativa auspiciada por Lehigh para organizar programas externos conducentes al doctorado que se proponía abrir una nueva avenida de educación superior en el Caribe. (Carta del Decano Stoops a Crescioni, 29 abril, 1974.) Como en todo programa educativo, quedó libre la autoridad académica de ambos centros de estudio para guiar su realización.

La experiencia con Lehigh en el desarrollo del programa no fue satisfactoria, lo que condujo a su cancelación por decisión académica administrativa tomada por el Presidente de la Universidad, informada en su carta de 29 mayo, 1974 al Presidente Lewis, de Lehigh: "Al cabo de dos años de experiencia en el programa doctoral conjunto entre la Universidad de Lehigh y la Universidad Interamericana, incluyendo recientes esfuerzos para clarificación de las perspectivas y términos bajo los cuales podría continuarse el programa, con gran pesar he llegado a la conclusión de que la única salida es terminar este esfuerzo cooperativo." El Presidente de la Interamericana, Sr. Descartes, ratificó ese criterio al deponer: "Pues ese programa doctoral se suspendió como una decisión de carácter académico, administrativa, pero con base académica porque la Universidad Interamericana no estaba satisfecha del grado de progreso que se estaba haciendo para alcanzar el tiempo en que la Universidad podría conceder directamente ese grado, de acuerdo con las aspiraciones de calidad que tenemos en esta institución." (Transcripción de la Deposición del 29 de enero, 1975, pág. 25.)

No es función de los tribunales revisar la sabiduría o corrección de las decisiones académicas de los colegios. Quien contrata con una universidad para la obtención de un grado

académico sabe de antemano que el convenio estará regulado por la finalidad de las decisiones internas que tome el centro docente en cuanto a calificaciones, asignaturas, facultad, bibliografía, métodos y todo cuanto concierne a las normas académicas de la institución. La bilateralidad contractual en un programa de estudios se aparta un poco del rigor que la impone en una orden para entrega de mercancía en el tráfico ortodoxo del comercio.

No confrontamos en este caso una conducta caprichosa o arbitraria de la Universidad, una grosera despreocupación por las aspiraciones de sus estudiantes, situación única en que se justifica la invasión del *campus* por el poder judicial. *Connelly* v. *University of Vermont and State Agr. Col.*, 244 F. Supp. 156 (1965); *Goldberg* v. *Regents of University of California*, 57 Cal. Rptr. 463 (1967). La razón que llevó a la Universidad a la suspensión de este curso de estudios es de superior valía en términos de docencia a la de estrechez económica que acepta como buena *Galton* v. *The College of Pharmaceutical Sciences, Columbia University*, 332 N.Y. Supp.2d 902 (1972), única autoridad citada en la ponencia de reconsideración.

La Universidad ha provisto remedio para los estudiantes acreedores a continuar el programa de doctorado, como explica la declaración jurada de su vicepresidenta-demandada Crescioni, que citamos:

"7. Que a pesar de entender que no tenía obligación de así hacerlo, la Universidad Interamericana ha ofrecido cooperar y ha cooperado con todos los estudiantes que han solicitado el continuar con sus estudios de Doctorado en Educación con la suma de $175.00, para gastos de viaje y una ayuda adicional de $2,000.00 una vez sean admitidos por la Universidad de Lehigh como candidatos al grado de Doctorado en Educación."

Todos éstos son hechos que con claridad surgen de los documentos tomados en consideración al resolver sobre la procedencia de la sentencia sumaria y que privan de todo carácter de controversia justiciable la reclamación de daños

por "frustración y desilusión" ascendente a $400,000 ($50,000 para cada uno de los 8 demandantes) más $100,000 de costas y honorarios que redondean el medio millón. (¹)

El error del tribunal a quo al denegar la sentencia sumaria pedida por la Universidad radica en concentrar la determinación de controversia justiciable exclusivamente en la conducta de Lehigh; en la premisa de que si ésta se inclinaba a continuar el programa conjunto, Interamericana sería responsable de la cancelación. Tal orden de razonamiento niega a Interamericana todo vestigio de autonomía para decidir sobre la marcha y en la consecución de los estudios si el programa satisfacía las normas de excelencia académica a que se refirió su presidente, y coloca al juez en el predicamento de hacer las delicadas evaluaciones y conclusiones académicas que nuestra estructura social y jurídica tiene encomendadas a los educadores.

En el normal desenvolvimiento de la actividad docente universitaria muchos programas alcanzarán concreción y plenitud; otros languidecerán y aun otros habrá que reformarlos o abandonarlos si su desarrollo no satisface los planes y perspectivas originales y si no encajan en el sistema integral de enseñanza de una universidad de altas normas. No son anticipables todos los factores en el complejo mundo de la educación universitaria. La oferta en el catálogo universitario de un curso de educación avanzada tiene urdimbre de intangibles y contingencias que la diferencian de la obligación de entregar un cargamento de atún o un embarque de arroz.

Hay que abordar con cautela cualquier criterio que incidentalmente contribuya a la erosión de la autonomía y diversidad de los colegios y universidades. *Berríos* v. *Inter Am. University*, 535 F.2d 1330 (1976).

El ejercicio de esa fundamental autonomía y la decisión tomada con "gran pesar" por el presidente, son los hechos presentes en la solicitud de sentencia sumaria y los documentos

---

(¹) Compárese con el costo de matrícula de $60 el crédito.

que la complementan, elemento básico que ni la demanda impugna ni la oposición de los demandantes ha podido superar. No aparece por ninguna parte que la decisión interna de la Universidad esté matizada de arbitrariedad o ilegalidad que justifique la intervención judicial para reparar agravios. *Connelly* y *Goldberg*, supra. Como ha dictaminado el 20 febrero, 1980 el Tribunal Supremo de los Estados Unidos negando a maestros de escuelas privadas la protección de leyes laborales, "el 'negocio' de la universidad es educación y su vitalidad dependerá finalmente de las directrices académicas que son formuladas en gran medida y generalmente implementadas por decisiones administrativas de la facultad". *National Labor Relations Board* v. *Yeshiva University*, 444 U.S. 672, 688 (1980).

En ausencia de controversia genuina, procede la sentencia sumaria que dictamos hace 2-1/3 años, y su reconsideración debe ser denegada.