# 99 DTA 159

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ**
**PANEL I**

CARMEN GOMEZ MARTINEZ, ET AL
Demandantes-Recurrentes

v.

WALTER BANCH PAGAN, ET AL
Demandados-Recurridos

Núm. KLCE-98-01334

San Juan, Puerto Rico, a 12 de mayo de 1999

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

## I

Los señores Carmen Gómez Martínez, Enrique Rivera Seguí, (en adelante Sra. Gómez), apelan de una sentencia parcial dictada el día 15 de diciembre de 1998, por el Tribunal de Primera Instancia, Sala Superior de Mayaguez, (en adelante el Tribunal). Mediante dicha sentencia, se declaró con lugar la moción de sentencia sumaria solicitando la desestimación de la acción incoada contra Walter Banch Pagán (M.D.) y la Sociedad de Gananciales compuesta por su esposa Fulana de Tal; Municipio de Mayaguez; y compañías aseguradoras de ambos denominada John Doe Parte Demandada Recurrida (en adelante el Dr. Banch y el Municipio).

Por los fundamentos expuestos a continuación, confirmamos la sentencia parcial dictada por el foro apelado.

## II

El día 13 de julio de 1996, la Sra. Gómez tuvo a su segundo hijo, alega que sufrió mucho y estuvo en grave peligro de muerte; por tal razón, decidió someterse a una intervención quirúrgica de esterilización permanente.

El Dr. Banch era el director del Departamento de Ginecología del Hospital San Antonio (el Hospital) propiedad del Municipio. Con anterioridad había atendido a la Sra. Gómez en el Centro Médico de Mayaguez, y fue él que la atendió en su segundo parto.

Con fecha de 26 de agosto de 1996 en horas de la mañana a la Sra. Gómez se le practicó intervención quirúrgica de esterilización en el Hospital por parte del Dr. Banch. Ella pagó la cantidad de $200.00 por el servicio de anestecia solamente. La herida de la operación se abrió e infestó. El 3 de septiembre de 1996 ella acudió de emergencia al Hospital. De inmediato fue referida al Dr. Banch, el cual se encontraba en su oficina privada y como empleado del Municipio, en su oficina le curó la herida. Le cobró $30.00 por sus servicios.

Tres meses después de la operación, para diciembre, sostuvo relaciones sexuales con su compañero y quedó embarazada de su tercer hijo el cual, ella no hubiese preferido procrear. El niño nació en la Clínica Perea de Mayaguez. La Sra. Gómez fue atendida por el Dr. Alemañy quien le practicó posteriormente otra intervención quirúrgica de esterilización permanente. La Sra. Gómez no ha vuelto a quedar embarazada.

Con fecha de 27 de agosto de 1997 la Sra. Gómez radicó demanda de Daños y Perjuicios por Impericia Médica en contra del Municipio y el Dr. Banch. La demanda fue contestada por el Municipio el 4 de diciembre de 1997. El Dr. Banch presentó moción de Sentencia Sumaria solicitando la Desestimación y alegó que cuando llevó a cabo la operación de esterilización a la Sra. Gómez era un médico empleado del Municipio de Mayaguez, por lo tanto, gozaba de la inmunidad que confiere la Sección 4105 del Título 26 de L.P.R.A. A su vez acompañó certificación del Gobierno Municipal la cual establecía, que para la fecha de 26 de agosto de 1996, era un empleado del Municipio,

Así las cosas el Tribunal celebró Conferencia con Antelación al Juicio el 10 de noviembre de 1998; por minuta hizo constar los planteamientos esbozados por la representación legal del Dr. Banch, declarando Ha Lugar la moción de Sentencia Sumaria y Desestimando la causa de acción contra éste. Inconforme la Sra. Gómez recurre ante nos.

## III

La Sra. Gómez sostiene que el Tribunal de Primera Instancia cometió el siguiente error:

*"SEÑALAMIENTO DE ERRORES Y DISCUSION*

*Bajo las circunstancias antes expresadas el Tribunal de Primera Instancia cometió error al declarar Con Lugar la moción de desestimación y Sentencia Sumaria basada en inmunidad conferida por la Sección 4105 del título [sic] 26 de L.P.R.A. que expone:*

*Ningún profesional de servicios de salud podrá ser incluido como parte demandada en una acción civil de reclamación de daños por culpa o negligencia por impericia profesional (malpractice) que cause en el desempeño de su profesión mientras dicho profesional de servicios de salud actúe en cumplimiento de sus deberes y funciones como empleado del Estado Libre Asociado de Puerto Rico, sus dependencias, instrumentalidades y municipios."*

## IV

La Sección 4105 del Título 26 de las Leyes de Puerto Rico Anotadas, 26 L.P.R.A. 4105, cap. 41, páginas 624 y 625, sobre la responsabilidad financiera sobre los profesionales de salud reza y citamos:

*"4105. Responsabilidad financiera*

*Todo profesional de servicios de salud e institución de cuidado de salud deberá radicar anualmente prueba de su responsabilidad financiera por la cantidad de cien mil (100,000) dólares por incidente o hasta un agregado de trescientos mil (300,000) dólares por año. El Comisionado podrá requerir límites hasta un máximo de quinientos mil (500,000) dólares por incidente médico y un agregado de un millón (1,000,000) de dólares por año, en los casos de instituciones de cuidado de salud y de aquellas clasificaciones tarifarias de profesionales de servicios de salud dedicados a la práctica de especialidades de alto riesgo, previa celebración de vistas públicas en las que tales profesionales e instituciones o cualquier otra persona interesada tengan la oportunidad de comparecer a expresar sus puntos de vista sobre el particular y a presentar cualquier información, documentos o estudios para sustentar su posición. Están exentos de esta obligación aquellos profesionales de servicios de salud que no ejercen privadamente su profesión y trabajan exclusivamente como empleados de instituciones de cuidado de salud privadas, siempre y cuando estuvieren cubiertos por la prueba de responsabilidad financiera de éstas. También están exentos de esta obligación los profesionales de servicios de salud que presten servicios exclusivamente para el Estado Libre Asociado de Puerto Rico, sus dependencias, instrumentalidades y municipios y que no ejercen privadamente su profesión. Están exentas además las instituciones de cuidado de salud que pertenezcan y sean operadas o administradas por el Estado Libre Asociado de Puerto Rico, sus dependencias, instrumentalidades y municipios.*

*La prueba de responsabilidad financiera exigida en el párrafo primero de esta sección deberá radicarse en la Junta Dental Examinadora o en el Tribunal Examinador de Médicos, en el caso de los profesionales de servicios de salud, según corresponda, y en el Departamento de Salud, en el caso de las instituciones de cuidado de salud, no más tarde del 30 de junio de cada año y cubrirá la responsabilidad financiera del profesional de servicios de salud o de la institución de cuidado de salud, según sea el caso, para el año siguiente.*

*Ningún profesional de servicios de salud podrá ser incluido como parte demandada en una acción civil de reclamación de daños por culpa o negligencia por impericia profesional (malpractice) que cause en el desempeño de su profesión mientras dicho profesional de servicios de salud actúe en cumplimiento de sus deberes y funciones como empleado del Estado Libre Asociado de Puerto Rico, sus dependencias, instrumentalidades y municipios. En toda acción civil en que se le reclamen daños y perjuicios a la Universidad de Puerto Rico, en todo caso en que recaiga sentencia por actos constitutivos de impericia médica hospitalaria (malpractice) que cometan los empleados, miembros de la facultad, residentes o estudiantes del Recinto de Ciencias Médicas de la Universidad de Puerto Rico o médico que presten servicios bajo contrato con la Universidad de Puerto Rico en el desempeño de sus tareas institucionales, o cuando recaiga sentencia por actos constitutivos de culpa o negligencia directamente relacionada con la operación por la Universidad de Puerto*

*Rico de una institución de cuidado de la salud, se sujetará a la Universidad de Puerto Rico a los límites de responsabilidad y condiciones que las secs. 3077 et seq. del Título 32 impone para exigirle responsabilidad al Estado Libre Asociado de Puerto Rico en similares circunstancias."*

Correctamente señaló el Tribunal apelado, en su Sentencia Parcial, el Dr. Banch sometió documento de Toma de Juramento de Fidelidad de Toma de Posesión de Empleo y Certificación de Empleo del Gobierno Municipal de Mayaguez, consignando que el día de los hechos, o sea el 26 de agosto de 1996 el Dr. Banch era empleado del Municipio efectuando funciones de médico en el Hospital Municipal San Antonio. Como vemos el Dr. Banch goza de inmunidad al a amparo de la Sección 4105 del Título 26 de L.P.R.A. Así mismo, la Sra. Gómez señala que el Tribunal erró al declarar con lugar la moción de desestimación y sentencia sumaria.

## V

La sentencia sumaria es un mecanismo procesal extraordinario y discrecional que sabiamente utilizado abona a la celeridad en la tramitación de un caso, permite limpiar el calendario judicial de reclamaciones inmeritorias, y ayuda a delimitar las controversias existentes, así como las reclamaciones y defensas de las partes. *PFZ Properties v. General Accident Insurance Co.,* Opinión de 7 de septiembre de 1994, **94 J.T.S. 116,** pág. 125; *Pilot Life Ins. v. Crespo Martínez,* Opinión de 13 de julio de 1994, **94 J.T.S. 104,** págs. 20-21; *Padín v. Rossi,* 100 D.P.R. 259, 263 (1971). Wright, Miller & Kane, *Federal Practice Procedure,* Civil 3d sec. 2172. Este mecanismo permite a los tribunales dictar sentencia sin celebrar la vista en los méritos del caso cuando *"las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho procede dictarse sentencia sumaria a favor de la parte promovente."* Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3. Véanse, además, *Sotomayor v. American International Ins. Co.,* Opinión de 28 de octubre de 1994, **94 J.T.S. 132,** pág. 311; *PFZ Properties, Inc. v. General Accident Insurance Co., supra; González v. Alicea,* Opinión de 4 de febrero de 1993, **93 J.T.S. 16,** pág. 10380; *Mercado Vega v. U.P.R.,* 128 D.P.R. 273, 281 (1991); J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña; Procedimiento Civil,* San Juan, **Publicaciones J.T.S.,** 1985, pág. 182; y R. Hernández Colón, *Derecho Procesal Civil,* San Juan, Michie, 1997, pág. 205; Wright, Miller & Kane, *supra.* Se desprende de lo anterior que para dictar sentencia sumaria no es suficiente que el juzgador estime que la situación fáctica presentada le permite establecer los méritos de una reclamación, ni que crea que la parte contra quien se dicta la sentencia tiene pocas probabilidades de prevalecer en el juicio, sino que sólo procede dictar tal sentencia cuando el tribunal tiene ante sí toda la verdad sobre los hechos pertinentes del caso, de forma que sólo reste aplicar el derecho. *Consejo de Tít. C. Parkside v. MGIC Fin. Corp.,* 128 D.P.R. 538, 548 (1991); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720 (1986); *Roth v. Lugo,* 87 D.P.R. 386, 397 (1963).

La parte que solicita un remedio, ya sea mediante demanda, reconvención, demanda contra tercero, demanda contra coparte o sentencia declaratoria, podrá presentar una petición de sentencia sumaria en cualquier momento después de haber transcurridos veinte días de la fecha en que se emplazó al demandado, o en cualquier momento después de que la parte contraria le haya notificado una solicitud similar. Por el contrario, la parte contra quien se ha instado una acción podrá solicitar que se dicte sentencia sumariamente a su favor en cualquier momento. No obstante, en ambas situaciones las solicitudes deben ser notificadas a la parte contraria al menos diez días antes de la fecha señalada para juicio. Reglas 36.1, 36.2 y 36.3 de Procedimiento Civil, *supra,* R. 36.2-36.3.

Corresponde a la parte que solicita la sentencia sumaria demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley. *Worldwide Food Distributors v. Colón Bermúdez,* Opinión de 30 de junio de 1993, **93 J.T.S. 114,** pág. 10966; *J.A.D.M. v. Centro Comercial Plaza Carolina,* Opinión de 19 de febrero de 1993, **93 J.T.S. 26,** pág. 10439; *Rivera Santana v. Superior Packaging, Inc.,* Opinión de 9 de diciembre de 1992, **92 J.T.**

**S. 165,** pág. 10165; *Cuadrado Lugo v. Santiago Rodríguez, supra.* La moción de sentencia sumaria deberá ir acompañada de documentos que avalen los hechos que sustentan la posición de la parte que la solicita, *Colegio de Ingenieros y Agrimensores v. A.A.A.,* Opinión de 21 de octubre de 1992, **92 J.T.S. 137,** pág. 10025. El propósito de presentar esta prueba adicional *"es ir más allá de las alegaciones y demostrar al tribunal que aun cuando exista o surja una aparente controversia de las mismas, en la realidad, tal controversia no existe."* R. Hernández Colón, *supra,* pág. 208. Cfr. J.A. Cuevas Segarra, *supra,* pág. 189. Así, la parte promovente puede en apoyo de su solicitud, acompañar la moción con declaraciones juradas, documentos u otro tipo de evidencia admisible, o plantear cuestiones de estricto derecho que no requieran la presentación de prueba adicional, tales como cosa juzgada, exoneración, pago, aceptación en finiquito, prescripción, etc. *Zachry International v. Tribunal Superior,* 104 D.P.R. 267, 271 (1975); *Roth v. Lugo, supra,* págs. 397-398.

De otra parte, para derrotar una solicitud de sentencia sumaria la parte opositora no puede cruzarse de brazos y descansar en sus alegaciones, sino que debe oponerse a la misma de forma tan detallada como la parte promovente lo haya hecho, estableciendo la existencia de controversia sobre los hechos pertinentes al caso. A tal efecto, también podrá someter declaraciones juradas u otros documentos que controviertan los hechos presentados por el promovente. Regla 36.5 de Procedimiento Civil, *supra,* R. 36.5; *PFZ Properties v. General Accident Insurance Co., supra; Cuadrado Lugo v. Santiago Rodríguez, supra,* J.A. Cuevas Segarra, *supra,* pág. 191. De no oponerse corre el riesgo de que se dicte sentencia en su contra sin la celebración de un juicio en su fondo. *Toledo Maldonado v. Cartagena Ortiz,* Opinión de 21 de diciembre de 1992, **92 J.T.S. 173,** pág. 10229; *Rivera Santana v. Superior Packaging, Inc., supra,* pág. 10165; *Mercado Vega v. U.P.R., supra,* pág. 281. Claro está, el simple hecho de no oponerse a la solicitud de sentencia sumaria con o sin prueba que controvierta los hechos presentados por el promovente no implica que proceda la sentencia sumaria solicitada ni que el promovente de la misma tenga derecho a que se dicte sentencia a su favor. *Corp. Presiding Bishop CJC of LDS v. Purcell, supra,* pág. 721. Obviamente, la concesión de este mecanismo procesal a una u otra parte dependerá de que a ésta le asista el derecho.

Debido a que una sentencia dictada sumariamente constituye una decisión en los méritos del caso, los tribunales deben ser sumamente cuidadosos en su utilización. Wright, Miller & Kane, *supra.* No puede olvidarse que el mecanismo de sentencia sumaria, al igual que todo nuestro ordenamiento procesal civil, tiene como objetivo fundamental obtener una solución justa a la controversia presentada, de forma que su utilización pueda poner en peligro o menoscabar los intereses y derechos de las partes. *PFZ Properties v. General Accident [sic] Insurance Co., supra; Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272, 279 (1990). Wright, Miller & Kane, *supra.* Así, pues, se ha señalado que todos los hechos presentados en la solicitud de sentencia sumaria deberán verse de la forma más favorable a la parte que se opone a la misma, y de surgir cualquier duda en cuanto a la existencia de controversia sobre algún hecho material del caso deberá resolverse en contra de la parte promovente. *Bonilla Medina v. P.N.P.,* Opinión de 13 de marzo de 1996, **96 J.T.S. 33,** pág. 790; *Corp. Presiding Bishop CJC of LDS v. Purcell, supra,* pág. 720; *Jorge v. Universidad Interamericana,* 109 D.P.R. 505, 512 (1980).

Con ello en mente, considerarán los tribunales todas las peticiones de sentencia sumaria. Por tanto, deberán: (1) analizar los documentos que acompañan la moción solicitando la misma, así como los documentos incluidos en la moción de oposición y cualquier otro que obre en el expediente; y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Properties v. General Accident Insurance Co., supra.* Todos los hechos alegados y no controvertidos se presumirán ciertos. *Corp. Presiding Bishop CJC of LDS v. Purcell, supra,* pág. 721. Además, podrán *"hacer uso de las presunciones de ley, del conocimiento judicial, de la cosa juzgada, pero no deben[n] entrar en el aspecto de la credibilidad de los "testimonios" ante su consideración a menos que ocurra la situación extrema de un hecho intrínsecamente inverosímil o irreal."* López Rivera v. E.L.A., 127 D.P. R. 530, 536-537 (1990).

A tenor con la normativa antes expuesta, es doctrina fuertemente establecida que los tribunales deberán abstenerse de dictar sentencia sumaria en aquellas circunstancias en que: (1) existe controversia sobre algún hecho material, ya sea que surge de los documentos que acompañan la moción o de cualquier documento que conste en el expediente; (2) existen alegaciones afirmativas en la demanda o la reconvención que no han sido refutadas; o (3) como cuestión de derecho no procede. *PFZ Properties v. General Accident Insurance Co., supra; Corp. Presiding Bishop CJC of LDS v. Purcell, supra*, pág. 723.

De otra parte, se ha señalado que este mecanismo procesal, aunque discrecional, no es el apropiado en casos complejos o que envuelvan cuestiones de interés público, ni en aquellos casos en donde es necesario establecer elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor credibilidad sea esencial. *Id.; Casto Soto v. Hotel Caribe Hilton,* Opinión de 17 de octubre de 1994, **94 J.T.S. 128**, pág. 311; *Corp. Presiding Bishop CJC of LDS v. Purcell, supra.*

## VI
Luego de considerar la solicitud de sentencia sumaria presentada por el Dr. Banch, sus anejos y las demás alegaciones contenidas en el expediente a la luz del marco doctrinal previamente reseñado, resulta evidente que el tribunal *a quo* no erró al emitir el dictamen sumario.

## VII
Por los fundamentos anteriormente expuestos, se confirma la Sentencia Parcial emitida el 15 de diciembre de 1998 por el Tribunal de Primera Instancia, Sala Superior de Mayaguez.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General