# 2002 DTA 88

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL II – BAYAMON**
**PANEL I**

ADA BALASQUIDE MORENO
Demandante-Recurrida

v.

JULIO BALASQUIDE REINA, AUREA BALASQUIDE REINA,
JOSE R. TORRES BALASQUIDE Y SU ESPOSA ANTONIA LOPEZ BERNARD,
LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS Y
ISLAND INSTITUTE FOR REMEDIAL EDUCATION, INC.
Demandados-Peticionarios

Núm. KLCE-01-01553

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

San Juan, Puerto Rico, a 18 de abril de 2002

▆▆▆▆▆▆▆▆

Panel integrado por su Presidente, Juez Sánchez Martínez,
la Jueza Ramos Buonomo y el Juez Aponte Hernández

Ramos Buonomo, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El caso que nos ocupa comenzó el 20 de julio de 1999, con la presentación de una petición de *injunction* por parte de la Sra. Ada Balasquide Moreno, única heredera e hija del causante, Sr. José Balasquide Reina, quien falleció el 14 de julio de 1999, contra sus tíos Julio y Aurea ambos de apellido Balasquide y contra su primo José R. Torres Balasquide y su esposa, Antonia Blanco.

En la demanda, la Sra. Balasquide adujo que tenía conocimiento de ciertos bienes líquidos dejados por su padre en varias entidades bancarias, al igual que de ciertas propiedades inmuebles y que algunos de dichos bienes o cuentas aparecen a nombre de la corporación Island Institute for Remedial Education, Inc., entidad que alega era un *alter ego* o conducto económico pasivo del causante.

Para evitar que los demandados, aquí peticionarios, se aprovecharan y dispusieran de tales bienes bajo la falsa representación de que son oficiales y directores de la mencionada corporación, la demandante le solicitó al tribunal recurrido, mediante el vehículo procesal de *injunction*, que dictara una orden para congelar las cuentas y para que se nombrara un administrador judicial del caudal.

El tribunal recurrido, por voz de la jueza Zadette Bajandas, determinó que la demandante tenía un remedio adecuado en ley para canalizar su solicitud de remedio, pero que el vehículo procesal correcto no era el recurso extraordinario de *injunction,* sino una petición para la administración judicial de los bienes a tenor con los Arts. 556 y siguientes del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2361 y ss.

A base de los fundamentos antes expuestos y tomando en consideración las alegaciones juradas de la demanda, el tribunal ordenó la continuación de los procedimientos por la vía ordinaria, ordenó celebrar una vista en aseguramiento de sentencia, conforme a la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56, y trasladó el caso a una sala civil ordinaria.

A pesar de que la demanda fue enmendada varias veces no fue sino hasta que se presentó la tercera demanda enmendada que se incluyó en el epígrafe, como parte, a la corporación, ello a pesar de existir, en las distintas demandas, alegaciones contra dicha corporación. Lo anterior, alega la demandante, por razón de que la corporación, incorporada desde 1973, ■ fue cancelada en los libros del Departamento de Estado desde el 8 de junio de 1997 por varios incumplimientos con la Ley General de Corporaciones. ■ La certificación del Departamento de Estado indica, además, que la entidad corporativa no cumplió con la presentación de los informes anuales durante los años comprendidos entre el 1990 y el 1995, razón por la cual no está en *"good standing"*.

Ya para el 12 de julio de 2000, el tribunal recurrido había ordenado la inclusión de la corporación en el pleito. Así que, el 28 de julio del mismo año, la parte demandante solicitó que se le expidieran los emplazamientos dirigidos a la corporación. No obstante, el 15 de agosto de 2000, el tribunal le notificó a la demandante que le concedía quince días para que primeramente enmendara la demanda, la cual se convirtió en la tercera demanda enmendada.

En esa etapa de los procedimientos renunció el representante legal de la demandante, Lcdo. Rafael Mayoral Morales, el 15 de agosto de 2000, concediendo el tribunal 45 días a la demandante para comparecer mediante nueva representación legal. En octubre de 2000 compareció el Lcdo. Manuel Durán Rodríguez como representante legal de la Sra. Ada Balasquide.

Así las cosas, el 4 de abril de 2001, la demandante presentó la tercera demanda enmendada en donde incluyó a la corporación solicitando una orden protectora para los bienes del caudal ofreciendo la correspondiente fianza y solicitando la adjudicación de los bienes del caudal de su padre. Asimismo, la parte demandante sometió el emplazamiento dirigido a la corporación para que el tribunal lo expidiera.

El 6 de junio de 2001, el tribunal le notificó a la demandante la expedición de los emplazamientos para todas las partes incluyendo a la corporación. ■

No obstante, el 6 de agosto de 2001, los demandados presentaron una moción para desestimar la tercera demanda enmendada. ■

En apretada síntesis, los demandados alegan que la corporación es parte indispensable y no ha sido emplazada en el término de seis meses que dispone la Regla 4.3(b) de Procedimiento Civil, *supra*. Los aquí peticionarios alegan que el término para emplazar a la corporación comenzó a decursar el 20 de septiembre de 2000.

Aducen, además, que la segunda y tercera demanda enmendada son idénticas y que *"los presupuestos alegacionales de éstas son prima facie falsos y fabricados"*. Alegan, también, que la demandante no es la única heredera, ya que años atrás un joven comenzó un procedimiento de filiación contra el padre de la demandante que nunca se culminó.

La demandante presentó el 27 de septiembre de 2001, una oposición a la solicitud de desestimación de los demandados en donde indica que los emplazamientos contra la corporación se expidieron en junio de 2001 y, por lo tanto, el plazo para emplazar aún no había concluido. Arguye la demandante que no sólo incluyó en su tercera demanda enmendada a la corporación sino que, además, incluyó una nueva causa de acción solicitando la división de los bienes de la herencia.

En atención a todas las anteriores mociones, el Tribunal de Primera Instancia dictó, el 6 de noviembre de 2001, la siguiente resolución:

*"A la moción de desestimación de los codemandados Julio, Aurea y José Balasquide bajo la Regla 4.3, sin lugar. El término de seis meses comenzó a decursar el 4 de abril de 2001."* ■

Inconformes, los demandados-peticionarios recurren ante nos para solicitar la revocación de la resolución emitida. Aducen que el tribunal recurrido cometió cinco errores. Los primeros tres van dirigidos a cuestionar la determinación del Tribunal de Primera Instancia bajo la Regla 4.3(b) de Procedimiento Civil, *supra*, en cuanto a los emplazamientos. Plantean que el Tribunal abusó de su discreción al prorrogar *sub silencium*, mediante la resolución recurrida, el término de seis meses para traer a la corporación al pleito. Los restantes dos errores van dirigidos a cuestionar la determinación del tribunal de denegar las distintas mociones de desestimación o sentencia sumaria presentadas por ellos en el pleito.

Tiene razón la demandante al alegar, en su oposición al recurso presentado, que independientemente de la fecha en que comenzó a decursar el término para emplazar en las distintas demandas presentadas, la realidad es que los demandados no sólo fueron notificados personalmente, sino que se sometieron a la jurisdicción del Tribunal de Primera Instancia. Recordemos que la comparecencia voluntaria de una parte demandada suple la omisión del emplazamiento y es suficiente para que la corte adquiera jurisdicción sobre la persona. *Qume Caribe, Inc. v. Srio. de Hacienda*, 153 D.P.R. __ (2001), **2001 J.T.S. 41**.

Un análisis de los autos y de la comparecencia de los demandados en las distintas mociones de desestimación y sentencia sumaria presentadas ante el tribunal recurrido revelan que la corporación se sometió a la jurisdicción del tribunal, a pesar de no haber sido emplazada mediante el diligenciamiento de un emplazamiento formal. Debemos tener presente que el Sr. Julio Torres, codemandado, es el agente residente de la corporación y ha sido emplazado debidamente en diversas ocasiones. Así, por ejemplo, una vez presentada la tercera demanda enmendada, donde específicamente se incluye a la corporación en el epígrafe y en las alegaciones, los aquí peticionarios comparecieron en la moción de desestimación no sólo en forma general como *"demandados"*, sino que realizaron planteamientos pertenecientes a todos los demandados, sin hacer la salvedad de que la corporación en cuestión no se sometía voluntariamente a la jurisdicción del tribunal. La corporación demandada levantó, específicamente, entre otros argumentos, defectos en el proceso de emplazamiento, defensa que competía a esa parte exclusivamente. Resulta, pues, evidente que todos los demandados, incluyendo a la corporación, se sometieron voluntariamente a la jurisdicción del tribunal.

Por tanto, aplica lo resuelto por el Tribunal Supremo en *Mercado v. Panthers Military Soc., Inc.*, 125 D.P.R. 98 (1990), y en *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 D.P.R. 664 (1989), en cuanto a que *"si la nueva parte comparece voluntariamente y realiza un acto sustancial que la constituye en parte en el pleito, se somete a la jurisdicción del tribunal y esto hace innecesario el trámite de notificación y emplazamiento de la Regla 4 de Procedimiento Civil, supra"*. Como se estableció en *Mercado, supra*, la búsqueda de la verdad y de que se cumplan los elementales principios de justicia no puede depender de las habilidades o destrezas técnicas de los abogados. *Berríos v. U.P.R.*, 116 D.P.R. 88 (1985).

Pero aun cuando no se hubiese sometido la corporación voluntariamente a la jurisdicción del tribunal, no procedía la desestimación del caso. Recientemente, el Tribunal Supremo resolvió en *Rosado Vda. de Rivera v. Rivera, et al.*, 155 D.P.R. __ (2001), **2001 J.T.S. 124**, mediante sentencia, que antes de desestimar un caso por no haber emplazado a una parte dentro del término de seis meses que dispone la Regla 4.3 de Procedimiento Civil, *supra*, hay que notificar primero a la parte el incumplimiento de su representante legal con los términos para emplazar y la grave consecuencia de la desestimación del pleito. Reitera, una vez más, la importancia de que los casos se resuelvan en los méritos y que las partes tengan su día en corte.

Reconoce el Tribunal Supremo que en la mayoría de los casos *"las partes no están enteradas de la actuación negligente de sus abogados y, al advenir en conocimiento de ello, la situación es corregida de inmediato"*. Es decir, en el caso de *Rosado, supra*, el Tribunal Supremo amplió el alcance de dicha norma a las disposiciones de la Regla 4.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.3(b), sobre el término para diligenciar el emplazamiento.

En el caso que nos ocupa, al igual que en *Rosado, supra*, no surge del expediente que a la parte demandante el tribunal le hubiese notificado, específicamente, del alegado incumplimiento de su representante legal con los términos para emplazar y para notificar sobre las gestiones que se estaban realizando en torno a dicho diligenciamiento, ni de las graves consecuencias que este incumplimiento podría acarrear, cual es la pérdida de su causa de acción al ser desestimada la demanda con perjuicio. La determinación de no permitir emplazar a la corporación siendo parte indispensable, conllevaría la desestimación con perjuicio de la demanda en su totalidad por un defecto de parte indispensable. En consecuencia, se desestimaría la acción aun para los demandados que fueron debidamente emplazados.

En *Banco Metropolitano v. Berríos*, 110 D.P.R. 721 (1981), el Tribunal Supremo resolvió, al interpretar la Regla 4.3(b) de Procedimiento Civil, *supra*, conjuntamente con la Regla 68.2 del mismo cuerpo de reglas, que el Tribunal de Primera Instancia tiene la facultad discrecional de prorrogar el término para diligenciar el emplazamiento, aún después de vencidos los plazos establecidos. Después de todo el más poderoso instrumento para hacer justicia, reservado a los jueces, es la discreción. *Id.* Añade que el propósito de los seis meses dispuesto en la Regla 4.3(b), *supra*, es un recurso del tribunal para acelerar la litigación más que una defensa del demandado. *Banco Metroplitano* indica que la determinación del tribunal de justa causa para prorrogar debe deducirse de su negativa a imponer la sanción de desestimación con perjuicio. Reitera que, después de todo, la política judicial es que los casos se ventilen en sus méritos. Aunque el foro recurrido no consigne expresamente la justa causa para conceder la prórroga, ello se deduce de la prórroga concedida. *López v. Porrata-Doria*, 140 D.P.R. 96 (1996).

Pero si lo anterior no fuera suficiente, a pesar de que el foro recurrido expresó, equivocadamente, que el término de seis meses de la Regla 4.3(b) comenzó a decursar el 4 de abril de 2001, ▇ la fecha correcta es junio de 2001, fecha en que el tribunal notificó los emplazamientos. *First Bank of P.R. v. Inmob. Nac., Inc.*, 144 D.P.R. 901 (1998); *López v. Porrata-Doria, supra*. Adviértase que el Tribunal de Primera Instancia tardó dos meses en notificar los emplazamientos oportunamente sometidos por la parte demandante. Si bien el Tribunal Supremo determinó en *Monell v. Mun. de Carolina*, 146 D.P.R. 20 (1996), que los emplazamientos deben diligenciarse dentro de los 6 meses desde su expedición, equiparando la fecha de expedición con la de

presentación de la demanda, el referido foro aclaró que lo anterior es así aún cuando existan unos pocos días de diferencia entre ambos sucesos debido a demoras legítimas y comprensivas. No obstante, en el caso de autos, el foro recurrido tardó, injustificadamente, más de 60 días en notificar el emplazamiento en cuestión.

Ante estas circunstancias particulares, en el caso de autos, la demora en que incurrió el Tribunal de Primera Instancia no puede reducir, sin determinación expresa a tales efectos, el término que la Regla 4.3 de Procedimiento Civil, *supra*, concede a un demandante para diligenciar un emplazamiento. Esto, máxime cuando la anterior norma está dirigida a evitar que quede al arbitrio de los demandantes o sus abogados la fecha en que se tramitarán los emplazamientos ni cuándo los mismos serán expedidos. *Monell v. Mun. de Carolina, supra.*

De otra parte, surge que la demandante le solicitó otra prórroga al tribunal para emplazar explicando la dificultad habida para dar con los demandados y la demandante procedió a emplazar a todas las partes, incluyendo a la corporación, el 25 de enero de 2002. Por todo lo anteriormente expuesto, el tribunal no cometió los primeros tres errores mencionados en relación con el emplazamiento de las partes y de la corporación.

Los peticionarios plantean, además, que el foro recurrido denegó, incorrectamente, las distintas solicitudes de desestimación o más bien de sentencia sumaria presentada por los demandados. No tienen razón.

La sentencia sumaria es un mecanismo procesal extraordinario y discrecional que procede cuando la parte promovente le demuestra al tribunal que no existe la necesidad de que se celebre una vista evidenciaria del caso en su fondo. Como regla general, se dicta la sentencia a base de los documentos admisibles en evidencia, sometidos por el promovente con su moción, los documentos sometidos por la parte promovida con su moción en oposición y aquéllos que obran en el expediente del tribunal. Los tribunales tradicionalmente acogen las mociones de sentencia sumaria cuando se demuestra que no hay hechos materiales esenciales en controversia y que ésta procede como cuestión de derecho. Esto es, se dicta sentencia sumaria cuando ha quedado establecido con claridad que para resolver la controversia no hace falta una vista evidenciaria. Además, cualquier duda sobre la existencia de una controversia debe resolverse contra la parte que la solicita. Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36; *Audiovisual Lang v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563 (1997); *PFZ Prps. Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994); *Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986); *Jorge v. Universidad Interamericana*, 109 D.P.R. 505 (1980).

En cuanto a las mociones de sentencia sumaria presentadas por los peticionarios y las oposiciones a éstas, es evidente que existen controversias de hechos esenciales que impiden que el tribunal dicte sentencia sumaria a favor de los peticionarios promoventes. Los demandados, aquí peticionarios, acompañaron la moción de sentencia sumaria presentada con documentos mediante los cuales pretendían probar que el causante, Sr. José Balasquide, era insolvente, es decir, de ingresos limitados y escasos bienes, que renunció al magisterio por haber sido declarado incapacitado por la Corporación del Fondo del Seguro del Estado por haber recibido una agresión en la escuela donde enseñaba y que se le concedió una franquicia como agente vendedor de lotería. De otra parte, la Sra. Balasquide presentó en su oposición a la sentencia sumaria solicitada, documentos tendentes a probar que el Sr. José Balasquide no era indigente, que depositaba su cheque de retiro del magisterio en las cuentas de la corporación, que el causante nunca fue declarado incapaz física o mentalmente por tribunal alguno, y que se retiró del magisterio por haber acumulado treinta años de servicio y no por la alegada agresión en el plantel escolar. Incluyó, también, documentos mediante los cuales pretende probar que la franquicia de la lotería le fue revocada al Sr. Balasquide, el 15 de mayo de 1996, precisamente por no cumplir con la ley tras averiguarse que ni era insolvente ni necesitado.

Mediante la moción de desestimación presentada por los peticionarios, contra la tercera demanda enmendada pretenden hacer ver *"que los presupuestos alegacionales de la parte demandante son prima facie falsos y fabricados"* sin presentar prueba alguna. Es decir, mediante esta última moción de desestimación se pretende solicitar sentencia sumaria por insuficiencia de la prueba.

No obstante, bajo cualquier circunstancia, al presentarse una moción de sentencia sumaria por insuficiencia de la prueba, la parte promovente tiene el peso afirmativo de demostrar que se ha llevado a cabo un descubrimiento de prueba completo, adecuado y apropiado o sea, que ha explorado concienzudamente la posibilidad de la existencia de una evidencia admisible. *Medina v. M.S. & D. Química P.R., Inc.*. 135 D.P.R. 716 (1994). Esto significa que tiene que poner al tribunal en posición de evaluar la adecuacidad del descubrimiento de prueba que realizó. Una simple alegación en la cual se concluya que no existe evidencia suficiente para la demandante probar el caso no basta para apoyar una moción de sentencia sumaria por insuficiencia de la prueba. El caso de *Medina, supra,* nos indica que tampoco se considerará adecuado el descubrimiento de prueba cuando un análisis de los documentos sometidos con la moción, con la oposición y aquellos que constan en el récord, refleje que la parte promovente ha dejado de auscultar alguna información que le pudiera haber conducido a obtener una prueba admisible. Bajo esas circunstancias habría que concluir que no se ha realizado un descubrimiento completo y adecuado, ya que el tribunal no puede determinar con certeza que la parte promovida no cuenta con evidencia suficiente para probar su caso. Por otro lado, cualquier duda en cuanto a si procede dictar sentencia sumaria por insuficiencia de la prueba debe resolverse a favor de la parte promovida.

En el caso que nos ocupa, en dicha moción de desestimación a la tercera demanda enmendada, los peticionarios no prueban haber hecho un descubrimiento de prueba completo que de margen para que el tribunal dicte una sentencia sumaria por insuficiencia de la prueba. No existe en el expediente ni en los autos, suficiente evidencia para probar lo que pretenden los peticionarios. Surge de los autos que la demandante le ha solicitado al tribunal en más de cinco ocasiones que sancione a los peticionarios por no haber contestado los interrogatorios que se le sometieron desde el 29 de diciembre de 1999 y aún los demandados no han contestado los interrogatorios ni el tribunal los ha sancionado. Bajo estas circunstancias, hay que concluir que no se ha realizado un descubrimiento completo y adecuado, ya que el tribunal no puede determinar, con certeza, que la parte promovida no cuenta con evidencia suficiente para probar su caso. Para que se pueda dictar sentencia sumaria por insuficiencia de la prueba, el promovente tiene que persuadir al tribunal de que no es necesario celebrar una vista evidenciaria, que el promovido no cuenta con prueba suficiente para probar un hecho esencial y que como cuestión de derecho, procede que se desestime la reclamación. *Medina v. M.S. & D. Química P.R., Inc., supra.*

Resolvemos que la moción de sentencia sumaria por insuficiencia de la prueba es prematura porque el descubrimiento de prueba es inadecuado, está a medias o no se ha realizado y por su naturaleza este caso no conviene que se resuelva por el mecanismo expedito de la sentencia sumaria.

Por último, queremos comentar una alegación que una y otra vez presentan los peticionarios en sus escritos a los efectos de que debe desestimarse el caso porque hace cuatro décadas una persona solicitó la filiación en contra del causante y que, por ende, le compete a la Sra. Ada Balasquide traer ese asunto a la consideración del tribunal. Nada más lejos de la verdad. En primer lugar, el tribunal recurrido tiene ante sí una determinación hasta ahora final declarando única y universal heredera del causante a la Sra. Ada Balasquide. Para todos los efectos legales es ella y nadie más, la parte interesada en la herencia de su padre. Si alguien que no sean los demandados (ya que éstos no tienen legitimación activa) tiene algo que oponer a ello, es en un procedimiento diferente, y no en éste, que tiene que plantearlo. Además, aún suponiendo que existiese otro hijo, ello no impide que la demandante, como heredera, reclame sus derechos de forma independiente. Lo planteado por los peticionarios resulta un tanto absurdo, pues la parte demandante, Sra. Ada Balasquide, no podría reclamar sus derechos, beneficiándose los demandados de ello hasta que un desconocido desee, si alguna vez así lo solicita, reclamar tal filiación.

Por último, exhortamos al tribunal recurrido a tomar un mayor control del caso. Es importante emitir las órdenes que correspondan en aseguramiento de sentencia y cualesquiera otra que procedan bajo la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56, sobre remedios provisionales. A pesar de que el Tribunal de

Primera Instancia los ha sancionado previamente, los demandados aún no han contestado los interrogatorios que la parte demandante les sometió desde 1999. Por tanto, el Tribunal de Primera Instancia deberá imponerles a los demandados sanciones ulteriores y de mayor peso si no contestan, en un plazo de tiempo razonable, dichos interrogatorios.

Asimismo, surge de los autos originales que, el 4 de noviembre de 2001, la parte demandante solicitó al foro recurrido el nombramiento de un contador-partidor en el caso. Por su parte, el tribunal recurrido ordenó a las partes a sugerir, de común acuerdo, a un candidato para dicha labor y, de no ponerse de acuerdo, a que cada parte propusiera tres candidatos.

No obstante, a tenor con *Janer Vilá v. Tribunal Superior*, 90 D.P.R. 281 (1964), el Tribunal de Primera Instancia, en vez de nombrar un contador-partidor, debe nombrar un administrador judicial contador-partidor que realice todas las operaciones relacionadas con los bienes de una herencia, es decir, un inventario, un avalúo de todos los bienes, incluso los bienes que aparecen a nombre de la corporación para salvaguardar así los mismos y que, a fin de cuentas, de prevalecer la demandante, se lleve a cabo la liquidación, la división y la correspondiente adjudicación de dichos bienes.

Para todo lo anterior, deberá celebrar una conferencia sobre el estado del caso para programar (calendarizar) todos los procedimientos a seguir incluyendo la vista en los méritos.

Por todo lo anteriormente expuesto, se expide el auto de *certiorari* solicitado y se confirma, aunque por fundamentos distintos, la resolución recurrida.▉

Se ordena al tribunal recurrido continuar con los procedimientos en el caso.

Así lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 88**

**1.** Island Institute for Remedial Education, Inc. fue creada en 1973 como una corporación sin fines de lucro para alegadamente servir a estudiantes con limitaciones físicas o mentales o estudiantes brillantes con talento que por alguna razón, se encontraban retrasados en sus estudios.

**2.** Comenzado el pleito, los demandados hicieron gestiones para rehabilitar la corporación.

**3.** Según surge de los autos originales, no es hasta el 29 de mayo de 2001 que el tribunal recurrido ordenó que se expidiera el emplazamiento.

**4.** Los demandados en este pleito han presentado varias mociones de desestimación, las cuales, en virtud de la Regla 10 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10, son realmente mociones de sentencia sumaria por haber incluido o haber acompañado documentos al respecto.

**5.** La alusión del tribunal al 4 de abril de 2001 corresponde a la fecha de la presentación de la tercera demanda enmendada. No obstante, debemos tener presente que el tribunal emitió nuevos emplazamientos en junio de 2001.

**6.** El foro recurrido consideró la fecha de la presentación de la tercera demanda enmendada olvidándose que no fue hasta el 6 de junio de 2001 que el tribunal notificó la expedición de los emplazamientos prorrogando así el término.

**7.** Recuérdese que la revisión judicial se da contra el dictamen y no contra sus fundamentos. *Pagán v. Alcalde Mun. de Cataño*, 143 D.P.R. 314 (1997); *Vélez Rodríguez v. Amaro Cora*, 138 D.P.R. 182 (1995).