# 2006 DTA 62

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE ARECIBO**
**PANEL VI**

LEONOR COLLAZO MERCADO, *ET AL.*
Demandantes

v.

FLUOR DANIEL CARIBBEAN, INC.
Demandado-Demandante contra Tercero

CONTECH OF PUERTO RICO
Tercero Demandado-Apelante

MERCK, SHARP & DOHME QUÍMICA DE PUERTO RICO
Tercero Demandado-Apelado

Núm. KLAN-2005-00236

San Juan, Puerto Rico, a 29 de marzo de 2006

Panel integrado por su Presidente, el Juez Martínez Torres,
el Juez Brau Ramírez y la Juez Fraticelli Torres

Fraticelli Torres, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos el tercero demandado, Contech of Puerto Rico (Contech) y nos solicita que revoquemos la sentencia sumaria parcial enmendada mediante la cual el Tribunal de Primera Instancia, Sala de Arecibo, desestimó la demanda de tercero que Contech instó contra Merck, Sharp & Dohme Química de Puerto Rico (Merck). El foro apelado basó su determinación en la doctrina de inmunidad patronal que cobija a todo patrono de reclamaciones directas o indirectas por causa de los daños sufridos por sus empleados en el lugar de trabajo.

Con el beneficio de la comparecencia escrita de ambas partes, resolvemos las controversias planteadas ante nos.

### I

Los hechos que originan el presente recurso ocurrieron el 31 de agosto de 2000, mientras la demandante Leonor Collazo Mercado y otros empleados se encontraban trabajando en un edificio de la empresa Merck. Ésta contrató los servicios de Fluor Daniel Caribbean, Inc. (Fluor Daniel) para realizar los trabajos de remoción e instalación de las losas del piso de ese edificio. Fluor Daniel subcontrató los servicios de Contech para realizar el trabajo. Los empleados de Contech utilizaron una combinación de uretano, ácido muriático y ácido sulfúrico en tales labores. (Apéndice del recurso, pág. 48.)

Mientras se realizaba la obra, la señora Collazo Mercado sufrió un mareo a causa del fuerte olor que la combinación de estos ácidos y químicos producía. Como consecuencia del mareo, rodó por las escaleras que bajaba en ese momento hasta llegar al suelo. ▮ La señora Collazo Mercado presentó una demanda contra Fluor Daniel por los daños y perjuicios sufridos por la caída. Fluor Daniel instó una demanda de tercero contra Contech, porque fueron los empleados de Contech quienes utilizaron la combinación de químicos en las labores de

remoción e instalación de las losas. (Apéndice del recurso, págs. 9-17.)

Contech contestó la demanda de Fluor Daniel e inició, a su vez, una demanda de tercero contra Merck. (Apéndice del recurso, págs. 4-8.) En su contestación, Contech admitió que utilizó los químicos, pero le imputó negligencia a Merck por los daños que sufrieron los empleados demandantes. Alegó que Merck no desalojó a sus empleados del área de trabajo cuando se realizaba la aludida remodelación del piso. (Apéndice del recurso, págs. 4-8; 25-30.)

Merck contestó la demanda y negó que existiera una causa de acción en su contra basada en el incidente que afectó a su empleada. Alegó que estaba cobijada por la inmunidad patronal como patrono asegurado. También adujo que procedía aplicar la doctrina de cosa juzgada o de impedimento colateral por sentencia a la reclamación que Contech instó contra ella, por lo resuelto en otro caso entre las mismas partes y sobre los mismos hechos. (Apéndice del recurso, págs. 31-35.) Merck se refirió al caso de *Lucy Rivera Arvelo v. Contech of Puerto Rico et al.*, caso civil número CDP- 2002-0280. (Apéndice del recurso, págs. 58-64.) En ese primer caso, el tribunal *a quo* desestimó la demanda de tercero que Contech presentó contra Merck, a base de la doctrina de inmunidad patronal. La sentencia advino final y firme, porque Contech no la apeló. Merck presentó una solicitud de Sentencia Sumaria Parcial basada en esos argumentos para que se desestimara la acción en su contra. (Apéndice del recurso, págs. 45-51.)

Contech replicó a la solicitud de sentencia sumaria sin acompañar ninguna declaración jurada. Alegó que la doctrina de cosa juzgada no aplicaba al caso de autos porque, en el primer pleito, quien hizo la reclamación contra Merck fue una de sus empleadas. En el caso de autos, la demandante original era empleada de la compañía de empleos temporeros Top Notch, que prestaba sus servicios a Merck cuando ocurrió el incidente; y Contech solicitó la indemnización contra Merck como demandante contra tercero, por medio de su aseguradora MAPFRE-PRAICO, *"por información que no existía antes, cuando se vio el caso anterior"*. (Apéndice del recurso, págs. 75-80.) Contech también adujo que en aquel caso lo que se imputó a Merck fue *negligencia*; en este caso Contech le imputa un *acto u omisión intencional*, que está desprovisto de la alegada inmunidad patronal.

En esencia, la contención principal de Contech ante el foro apelado fue que Merck se negó a remover a sus empleados del área de trabajo, a pesar de que Contech le solicitó expresamente que lo hiciera, por lo que su renuencia a así hacerlo constituyó *"una decisión intencional de dejar a sus empleados en un área donde existía la posibilidad de que estuvieran expuestos a [los] vapores y gases"* que se utilizaban en la remoción de los pisos. Cita numerosa jurisprudencia estatal estadounidense en apoyo de su contención.

El tribunal *a quo* acogió la solicitud de sentencia sumaria de Merck y desestimó la demanda contra ella, tras expresar lo siguiente:

*"[...]*

*Es evidente que existe identidad de cosas y causas, toda vez que se trata de la misma acción y sobre el mismo asunto, pero con una alegación distinta. Por lo tanto, al concurrir en el caso de autos la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron, el asunto es cosa juzgada.*

*Aun si no fuera de aplicación la doctrina de cosa juzgada, forzoso es concluir que igualmente estamos ante un patrono asegurado de (sic) que quedó cobijado por la inmunidad patronal.*

*[...]."*

(Apéndice del recurso, págs. 4-8.)

Insatisfecha, Contech solicitó la reconsideración del dictamen, pero le fue denegada. ■ Acudió ante nos con el recurso de autos y señaló que el tribunal apelado incidió: (1) al determinar que la doctrina de cosa juzgada es de aplicación al caso de autos; (2) al determinar que también es de aplicación la doctrina de inmunidad patronal; (3) al resolver sumariamente las controversias planteadas por Merck sin el beneficio de una vista evidenciaria. Hemos de examinar cada planteamiento separadamente.

## II

### A. *La doctrina de cosa juzgada*

La doctrina de cosa juzgada es de estirpe civilista y tiene base estatutaria en el Artículo 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3343, donde adquiere carácter de norma sustantiva, y en el Artículo 421 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1793, que le da proyección evidenciaria. ■ *Ramos González v. Félix Medina,* 121 D.P.R. 312, 326 (1998); *Lausell Marxuach v. Díaz de Yáñez,* 103 D.P.R. 533, 535 (1975). ■

Según dispone el Artículo 1204, para que se active la presunción de cosa juzgada en otro juicio, "*es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron*". [Énfasis nuestro.] La causa o "*la razón de pedir*" se define como el derecho que ha de hacerse efectivo o el daño que debe ser compensado. *Bravo v. Corte de Distrito,* 34 D.P.R. 792, 794 (1925).

La doctrina está arraigada en el interés del Estado en ponerle fin a los litigios y en proteger a los ciudadanos para que no se les someta en múltiples ocasiones a los rigores de un proceso judicial. *Pérez v. Bauzá,* 83 D.P.R. 220, 225 (1961). El propósito de la defensa de cosa juzgada, "*es promover la finalidad de las controversias judiciales y evitar las continuas molestias a una parte con la presentación sucesiva de varios pleitos relacionados con el mismo asunto*". *Zambrana v. Tribunal Superior,* 100 D.P.R. 179, 181 (1971); *Mercado Riera v. Mercado Riera,* 100 D.P.R. 940, 950 (1972); *Pagán Hernández v. U.P.R.,* 107 D.P.R. 720, 732-733 (1978).

Al margen de lo dicho, el Tribunal Supremo de Puerto Rico ha rechazado la aplicación automática de la doctrina de cosa juzgada a pleitos subsiguientes entre las mismas partes. *Banco de la Vivienda v. Ortiz,* 130 D.P.R. 730, 739 (1992). Por ello, ha adoptado como doctrina legal que, cuando un tribunal se proponga hacer una determinación, a base de que la cuestión litigada constituye ya cosa juzgada, debe fundamentar su decisión "*en consideraciones de orden público y de necesidad*". Incluso, ha reiterado que "*la presunción de cosa juzgada tiene bien definidas excepciones en ley, y de orden equitativas*". *Pérez v. Bauzá,* 83 D.P.R., a la pág. 225, y *Figueroa v. Municipio de San Juan,* 98 D.P.R. 534, 556 (1970). Teniendo en cuenta estos principios, el Tribunal Supremo ha exceptuado la aplicación de la doctrina en múltiples circunstancias para evitar una injusticia o para atender un caso con consideraciones e implicaciones de orden público. Véase, *Meléndez v. García,* res. el 12 de septiembre de 2002, 158 D.P.R. ___ (2002), **2002 J.T.S. 127**, a las págs. 206-207; *Parrilla v. Rodríguez y otros,* res. el 12 de noviembre de 2004, 163 D.P.R. ___ (2004), **2004 J.T.S. 180**, *in passim.*

En el caso de autos, el Tribunal de Primera Instancia resolvió que la defensa de cosa juzgada aplicaba al presente litigio. Específicamente, señaló lo siguiente sobre ese particular:

"*En el caso CDP2002-0280, Contech presentó demanda contra tercero para incluir a MSD y alegó que por su negligencia MSD era responsable por los alegados daños sufridos por la demandante. En el caso de marras, nuevamente Contech presentó demanda contra tercero para incluir a MSD como responsable de los daños sufridos por la demandante, pero en esa ocasión alegan que el daño fue causado intencionalmente. Es evidente, que las partes y la calidad en que lo fueron, son las mismas independientemente de quién realice la alegación.*

*[...]*

*Con relación al Segundo argumento de Contech, la causa o reclamación es distinta por estar esta vez alegando intención de parte de MSD en contraste con el pleito anterior donde se alegó negligencia.*

*[...]*

*Es evidente que existe identidad de cosas y causas, toda vez que se trata de la misma acción sobre el mismo asunto, pero con una alegación distinta. Por lo tanto, al concurrir en el caso de autos la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron, el asunto es cosa juzgada."*

(Apéndice del recurso, págs. 4-8.)

Contech alega que la sentencia que puso fin al caso CDP-2002-0280, ventilado ante el Tribunal de Primera Instancia, Sala Superior de Arecibo, no constituye cosa juzgada respecto al caso que tenemos ante nuestra consideración, esencialmente porque no comparten las mismas causas de acción. No le asiste la razón.

Como se ha señalado, para que una parte pueda rebatir exitosamente la defensa de cosa juzgada es necesario que establezca que el caso terminado por sentencia y aquél en el que la invoca, no tienen *"la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron"*. Al aplicar los criterios que establece el Artículo 1204 del Código Civil de Puerto Rico, según han sido interpretados por la jurisprudencia, podemos afirmar que en el caso de autos hay identidad entre las personas de los litigantes (entre ellas, Contech y Merck) y la calidad en que lo fueron en el pleito anterior. Existe, además, concordancia adecuada entre las causas de acción que se presentaron en ambos pleitos.

A base de los precedentes evaluados, debemos concluir que la causa de acción, es decir, *la razón de pedir* del demandante contra tercero en el caso de autos —que Merck participó de la actuación torticera—, ya fue adjudicada en el pleito anterior. *Ramos González v. Félix Medina,* 121 D.P.R., a las págs. 331-332. En el caso de autos no se trata de una reclamación independiente generada por una actuación torticera distinta e independiente de Merck. La reclamación de Contech para obtener un resarcimiento económico, por el alegado acto u omisión negligente o intencional por parte de Merck, tiene su origen y amparo en el Artículo 1802 del Código Civil respecto a los mismos hechos que generaron el primer pleito. No existe diferencia entre las dos causas de acción generadas por la alegada omisión de Merck al no desalojar a sus empleados del área de trabajo mientras Contech realizaba el trabajo de remoción e instalación de los pisos. En ambos litigios, el derecho que debe hacerse efectivo y el daño que Contech reclama que debe ser compensado son iguales. Por tanto, ante la presencia de identidad de partes y de causas, procedía declarar con lugar la defensa de cosa juzgada, incluso, por su modalidad de impedimento colateral por sentencia. *Acevedo v. Western Digital Caribe, Inc.,* 140 D.P.R. 452, 464 (1996); *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753, 762 (1981).

La modalidad del impedimento colateral por sentencia opera *"cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final... [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas".* *Fatach v. Triple S, Inc.,* 147 D.P.R. 882, ___ (1999), que cita con aprobación a *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R., a la pág. 762.

El Tribunal Supremo ha dicho que esta modalidad *"procura los mismos propósitos que la doctrina de cosa juzgada; a saber, se protege a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia; promover la economía judicial y administrativa al evitar litigios innecesarios y evitar decisiones inconsistentes".* *Méndez v. Fundación,* res. el 11 de julio de 2005, 165 D.P.R. ___ (2005), **2005 J.T.S. 106**; *Suárez v. E.L.A et al.,* res. el 28 de mayo de 2004, 162 D.P.R. ___ (2004), **2004 J.T.S. 89**; *Rodríguez Rodríguez v. Colberg,* 131 D.P.R. 212, 219 (1992). La doctrina de

impedimento colateral, sin embargo, *"se distingue de la cosa juzgada, debido a que no es necesario que se de el requisito de identidad de causas necesario para aplicar la segunda"*. *Rodríguez Rodríguez v. Colberg*, 131 D.P.R. 212, 219 (1992); *Pereira v. Hernández*, 83 D.P.R. 160, ___ (1961).

No erró el tribunal *a quo* respecto al primer señalamiento de error.

## B. *La inmunidad patronal y la demanda contra tercero*

La Ley del Sistema de Compensaciones por Accidentes del Trabajo que administra el Fondo protege a los trabajadores contra riesgos a su salud en su trabajo o empleo. La política pública que respalda la ley se ampara, a su vez, en el Art. II, Sec. 16 de la Constitución del Estado Libre Asociado de Puerto Rico, que reconoce el derecho de todo trabajador a estar protegido contra esos riesgos. 11 L.P.R.A. sec. 1a. ▆ El Fondo cuenta con un sistema compulsorio de aportación patronal a un fondo de seguro estatal, que tiene el fin de compensar a los empleados que sufren lesiones, se incapacitan o mueren como consecuencia de accidentes ocurridos en el curso de sus empleos. *Montaner v. Comisión Industrial,* 59 D.P.R. 396, 399 (1941).

Cuando el patrono está asegurado con el Fondo, los trabajadores ceden, en cierta medida, el derecho a demandarlo por los daños que sufren en el empleo, a cambio de los diversos beneficios que reciben del sistema de protección laboral que creó la Ley de Compensaciones. Art. 1 A, 11 L.P.R.A. sec. 1a. Es decir, *"los beneficios que provee internamente el Sistema [del Fondo] constituyen el sustituto económico del remedio legal"*. *Id.* Como consecuencia, los empleados sólo tienen derecho a reclamar los beneficios que provee el Fondo, independientemente de la negligencia patronal que haya provocado u originado el accidente. *Admor. F.S.E. v. Flores Hermanos,* 107 D.P.R. 789, 792 (1976); *Cruz Rodríguez v. A.A.A.,* 101 D.P.R. 269, 270 (1973); *Vda. de Andino v. A.F.F.,* 93 D.P.R. 170, 181 (1966).

Por tanto, un patrono no puede ser *"un codemandado directo, ni respondería de manera indirecta como un tercero demandado, ni podría la demandada resarcirse luego del patrono como un colaborador con ella del daño"*. *Vda.* de *Andino v. A.F.F.,* 93 D.P.R., a la pág. 180, nota al calce omitida. Esta norma responde al presupuesto básico que postula que *"[l]a inmunidad contra responsabilidad en daños de un patrono asegurado, por su culpa, es absoluta bajo el plan integral de funcionamiento de la ley que provee compensación por el accidente del trabajo"*. *Id.*

Aún más, el Tribunal Supremo dijo en *Cortijo Walker v. Fuentes Fluviales,* 91 D.P.R. 574, 583 (1964), que *"el patrono no le es responsable al obrero en daños, luego no adquiere la condición de un co-causante del daño, (joint tortfeasor) conjuntamente con la tercera persona y tercero demandante. La responsabilidad del patrono es una absoluta, sin consideración a su negligencia y prescindiendo de ésta, y dicha responsabilidad objetiva es la única que le obliga, fuere él negligente o no. La reclamación o remedio del obrero contra su patrono es únicamente por los beneficios estatutarios; su reclamación contra el tercero es por daños. Ambas razones de pedir son en derecho de distinta categoría y no pueden engendrar una responsabilidad legal en común."*

Es decir, bajo el esquema de la Ley de Compensaciones es improcedente que el tercero que le provocó el daño al empleado inste una acción contra el patrono de ese empleado, cuando se trata de un patrono asegurado y el accidente está cubierto por la Ley. Véase, *Cortijo Walker, ante,* a la pág. 580. Tampoco procede *"bajo la teoría de la contribución, en que un cocausante del daño vendría obligado a responder a otro cocausante, como bajo la teoría del derecho de un demandado en daños a ser indemnizado por un tercero demandado en relación con los hechos"*. *Id,* a las pág. 580-581.

De lo anterior se colige, que el patrono no responde de manera indirecta, ya sea como tercero demandado ni porque el tercero que provocó el accidente pretenda ir luego contra el patrono como colaborador del daño. No obstante, desde 1966, el alto foro expresó que al tercero *"debe imponérsele la obligación de resarcir el daño sólo*

*en proporción a su propia culpa y al grado en que colaboró a producirlo"*. *Vda. de Andino, ante,* a las págs. 181-182.

No obstante, la inmunidad patronal cede cuando el patrono ha cometido u omitido un acto de manera intencional o discriminatorio, cuando el patrono no está asegurado, o cuando el patrono ha actuado en virtud de una doble capacidad o personalidad. Véase, *Soc. de Gananciales v. Royal Bank de P.R.,* 145 D.P.R. 178, 195-196 (1998); *Laureano Pérez v. Soto,* 141 D.P.R. 77, 84 (1996); *Odriozola v. Superior Cometics,* 116 D.P.R. 485, 501 (1985); *Díaz Medina v. Santiago del Toro,* 110 D.P.R. 139, *in passim* (1980); *Vélez Sánchez v. Comisión Industrial,* 107 D.P.R. 797, *in passim* (1978). Por consiguiente los empleados pueden demandar a su patrono por los daños sufridos en el curso de su empleo de darse las circunstancias excepcionales descritas.

En *Pons y otros v. Engebretson y otros,* res. el 30 de septiembre de 2003, 160 D.P.R. ___ (2003), **2003 J.T.S. 150,** a la pág. 229, el Tribunal Supremo amplió la norma vigente para disponer que *"cuando se trate de una obra que por su naturaleza implique riesgos particulares, el empleador será responsable por la negligencia del contratista si omite exigirle en el contrato tomar las medidas de seguridad especiales que sean necesarias o, en caso de no incluirlas en el contrato, si el empleador no ejerce la debida diligencia para tomar por sí mismo tales medidas de alguna forma".* Pero aclaró que, por no tratarse de una norma de responsabilidad absoluta, el empleador no estaba compelido a prever todos los riesgos probables que la actividad pueda provocar. *Id.*

A fin de proteger a todos los obreros y empleados de los riesgos de su oficio, la Ley de Compensaciones es enfática al disponer que todos los patronos tienen la obligación de asegurar a los trabajadores de cualquier compañía cuyos servicios contraten, siempre que ésta no lo haga. *Colón Santiago v. Comisión Industrial,* 97 D.P.R. 208, 209 (1996). Específicamente, el Art. 19 de la Ley de Compensaciones dispone que:

*"Todo patrono asegurado al dar cuenta con sus nominas anuales deberá incluir en tales nominas los salarios pagados a todos los obreros y empleados que estuvieren trabajando o fuere a emplear bien por ajuste, o ya bajo una persona con quien ajustó el patrono o bajo un contratista o subcontratista independiente empleado o contratado por dicho patrono, y toda cuenta, o impuesto cobrado por el Estado se basara sobre la nomina corriente del patrono, en las cuales deberán estar incluidos los trabajadores antes mencionados. Disponiéndose, que esta disposición no será aplicable a los patronos para quienes se hiciere trabajo por un contratista independiente que estuviere asegurado como patrono de acuerdo con las disposiciones de este Capitulo."* ∎

[Énfasis nuestro.] Art. 19, Ley de Compensaciones, 11 L.P.R.A. sec. 20.

Con este esquema legislativo se creó la figura del patrono estatutario. Sabemos que, como parte de las operaciones de sus empresas o negocios, en ocasiones los patronos tienen que contratar los servicios de otras compañías para realizar algunas labores que sus propios empleados no pueden realizar. Estos obreros y empleados también están expuestos a los riesgos del trabajo y sufren accidentes en el curso de su jornada laboral. Asimismo, los trabajos que realizan estos obreros y empleados pueden crear ciertos riesgos para los empleados de la empresa o negocio que los contrató. Estos obreros y empleados tienen *un patrono real,* el contratista, que es aquél con quien ellos mantienen la relación de trabajo directa, regular o principal, y *un patrono estatutario,* que es aquél para quien realizan la labor contratada en un momento determinado, por virtud de la relación contractual surgida entre éste y su patrono regular. *Martínez Rodríguez v. Bristol Myers,* 147 D.P.R. 383, 395-396 (1999).

Tal definición fue acogida por el Tribunal Supremo, al expresar que *"[l]la determinación de si un demandado es o no patrono estatutario depende de las relaciones contractuales entre dicho demandado y el patrono real de los obreros"*. *Vda. de Costas v. P.R. Olefins,* 107 D.P.R. 782, 785 (1978).

Consecuentemente, la inmunidad que crea la Ley de Compensaciones cobija a los patronos estatutarios *únicamente* si se dan dos circunstancias: (1) si el patrono estatutario asegura, ante el Fondo, a los trabajadores del

patrono real que van a realizar labores para él, *cuando el patrono real no los asegura;* o (2) si el patrono directo real asegura, ante el Fondo, a sus trabajadores y éstos realizan servicios para el patrono estatutario, *aunque éste no los asegure. Martínez Rodríguez v. Bristol Myers,* 147 D.P.R., a la pág. 397.

No está en controversia en el caso de autos que Merck es un patrono asegurado. No afecta la disposición del caso el hecho de que la demandante Collazo Mercado fuera una empleada temporal. La protección que brinda la legislación social a todo patrono se extiende hasta los empleados subcontratados, por virtud de la figura del patrono estatutario. Ello es así en este caso, con independencia de cuál patrono pagaba el salario de la demandante, siempre y cuando el tipo de labor que ésta realizaba para Merck estuviera cubierta por la póliza que Merck o Top Notch pagaron al Fondo del Seguro del Estado, a tenor de la clasificación de riesgos asegurados. Al ser Merck un patrono asegurado, Contech no podía obviar la protección legislativa dada a Merck por medio de una demanda contra tercero, que obligara a éste a pagarle o compartir el pago de una indemnización por los daños ocurridos a una de sus empleadas en ocasión del empleo o en el lugar de trabajo. No erró el tribunal apelado respecto al segundo señalamiento de error.

## C. *La disposición sumaria del asunto en cuestión*

La Regla 36 de Procedimiento Civil regula los criterios para la adjudicación sumaria de una controversia, previa solicitud de parte. 32 L.P.R.A. Ap. III, R. 36. La Regla 36.2 específicamente permite a una parte presentar una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de la reclamación. (Énfasis nuestro.) 32 L.P.R.A. Ap. III, R. 36.2. Su propósito principal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos relevantes y que, por ello, no requieren la celebración de un juicio plenario, porque sólo resta dirimir las controversias de derecho. *Vera et al. v. Dr. Bravo et al.,* res. el 27 de febrero de 2004, 161 D.P.R. ___ (2004), **2004 J.T.S. 40,** a las págs. 744-747.

El dictamen sumario puede dictarse a favor o en contra de cualquier parte en el pleito, mediante el mecanismo de la sentencia parcial, a tenor de la Regla 43.5 de Procedimiento Civil, [7] o de la resolución interlocutoria con un fin análogo, al amparo de la Regla 36.3 del mismo cuerpo legal. 32 L.P.R.A. Ap. III, R. 36.3 y R. 43.5. Véase, además, *Corp. Presiding Bishop* CJC *of LDS v. Purcell,* 117 D.P.R. 714, 720 (1986); y *Roth v. Lugo,* 87 D.P.R. 386, 397 (1963).

En todo caso, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente, antes de concluir que no hay controversia real sustancial en cuanto a ningún hecho relevante a la controversia y que, como cuestión de derecho, debe dictarse la resolución o sentencia sumaria a favor de la parte promovente. Sobre esta parte recae el peso de establecer la ausencia de controversia real sobre los hechos relevantes y de demostrar que el derecho la favorece. *Hurtado v. Osuna,* 138 D.P.R. 801, 809 (1995); y *Tello Rivera v. Eastern Airlines,* 119 D.P.R. 83, 86 (1987).

Para oponerse a la solicitud de sentencia sumaria, la parte contraria debe presentar documentos y declaraciones juradas que demuestren que hay controversia real sobre los hechos pertinentes y esenciales que el solicitante presenta como indubitados. El tribunal sentenciador debe dar una interpretación favorable a la prueba presentada por la parte oponente para derrotar la resolución sumaria solicitada. Incluso, el tribunal debe tomar sus alegaciones como ciertas, al evaluar si procede que se dicte el dictamen sumario contra ella. *Roth v. Lugo,* 87 D.P.R., a las págs. 397-398. La ausencia de tal prueba, sin embargo, no conlleva la concesión de la disposición sumaria a favor del solicitante, aunque puede dejar incólume la alegación de que no hay controversia real de hechos que amerite un juicio plenario para dilucidarla. *Vera et al. v. Dr. Bravo et al.,* **2004 J.T.S. 40,** a las págs. 749-750; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R. 881, 912-913 (1994).

Al considerar la disposición sumaria de la controversia, el tribunal también puede hacer uso de las presunciones de ley, del conocimiento judicial o de la doctrina de cosa juzgada, pero no puede entrar a considerar aspectos de credibilidad, a menos que se le presente un hecho como no controvertido que sea intrínsicamente inverosímil o irreal. *Roth v. Lugo,* 87 D.P.R., a la pág. 397.

Como foro apelativo, debemos utilizar los mismos criterios que el Tribunal de Primera Instancia al evaluar si procedía que éste dictara la sentencia sumaria parcial a favor del promovente, Merck. En esta tarea tenemos dos limitaciones: primero, sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y, segundo, sólo podemos determinar si efectivamente existe o no alguna controversia genuina de hechos pertinentes y esenciales y si el derecho se aplicó de forma correcta. *Vera et al. v. Dr. Bravo et al.,* **2004 J.T.S. 40**, a la pág. 746, que cita con aprobación a 10A Wright, Miller & Kane, *Federal Practice and Procedure* 3d, Sec. 2716, págs. 273-286 (1998).

Es decir, nuestra función revisora se limita a corroborar si existe en el expediente judicial prueba suficiente para rebatir o cuestionar los hechos que la moción presenta como incontrovertibles. Si no la hay, debemos determinar si las normas que configuran la causa de acción en que se basó la solicitud de disposición sumaria de la controversia en cuestión sostienen el dictamen a favor del promovente.

Como estamos en igual posición que el foro primario para evaluar si procedía la disposición sumaria de la solicitud de desestimación de Merck, resolvemos que, de los documentos obrantes en el expediente, no surge la controversia real de hechos necesaria para la ventilación plenaria de la única cuestión planteada, la inmunidad patronal de Merck. El foro *a quo* sólo tenía ante sí cuestiones de derecho que resolver, porque Contech no configuró una controversia real de hechos, sostenible en otra prueba independiente que no fueran sus propias alegaciones. Incluso, tal como señaló el tribunal *a quo* en su sentencia sumaria parcial, *"surge de las defensas afirmativas presentadas por Contech que Merck le requirió a éste tomar las medidas de seguridad necesarias para evitar afectar a sus empleados y que éstos así lo hicieron"*. (Véase, Apéndice del recurso, págs. 25-30.) De ello se deduce que Contech no contradijo efectivamente la alegación de Merck de que, en todo caso, la omisión imputada configuró un acto negligente, no intencional. No erró el tribunal *a quo* respecto al tercer señalamiento de error.

### III

Por los fundamentos expuestos, se confirma la sentencia sumaria parcial apelada que ordenó la desestimación de la causa de acción contra Merck y su exclusión del pleito y se ordena la continuación de los procedimientos de conformidad con lo expresado en esta sentencia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones